UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| JULIE A. ROBINSON, <br><br> Plaintiff, <br><br> v. <br><br> BOARD OF SCHOOL TRUSTEES OF WAWASEE COMMUNITY SCHOOL CORPORATION, <br><br> Defendant. | CAUSE NO. 3:19-CV-41 DRL |

OPINION AND ORDER

For over ten years, Julie Robinson served as the head varsity swim coach at Wawasee High School. In 2019, her contract was not renewed. She says her non-renewal occurred because of discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, and the First and Fourteenth Amendments to the United States Constitution.[1] Today Wawasee requests summary judgment on all claims. Because no reasonable jury could find for Ms. Robinson, the court grants the motion.

BACKGROUND

In 2008, Ms. Robinson was hired as Wawasee's head varsity swim coach. She also coached a private club swim team that practiced at Wawasee's pool. She began her career coaching her three daughters and a few other kids at a YMCA. She mentored under college coaches during camps for several years, including accomplished coaches from the University of Virginia, University of Pennsylvania, the University of North Carolina, and Huntington University. She would later coach at the Olympic Training Center in Colorado. Her experience brought her to Wawasee.

---

[1] Ms. Robinson withdrew an earlier claim that this conduct constituted retaliatory discharge under Indiana law.

At the time of events, Dr. Thomas Edington was the school's superintendent. Kim Nguyen was the principal. Cory Schutz served as athletic director after taking over for the retiring Steve Wiktorowski around 2015 or 2016. Jason Scott and Andy Kryder coached the school's middle school team, which fed swimmers into the high school program.

Ms. Robinson claims discrimination came in many forms. In 2011, not long after joining the program, she says Superintendent Edington approached her on the pool deck and told her to be "more approachable" and "softer like a woman."

The following year, the school board received expert recommendations to address structural problems with Wawasee's swimming pool. The athletic director had previously inquired of pool testing and encouraged Ms. Robinson to use the chain of command to voice any concerns. She had concerns that the pool's air quality made it difficult to breathe. In 2012, she chose to raise her concerns at a school board meeting, drawing the seeming ire of board members and prompting a response from Superintendent Edington. He called the athletic director who prepared a memorandum of the reactions from the meeting and advice for Ms. Robinson.

Wawasee says the athletic director then sent this memorandum to Ms. Robinson.[2] The board viewed her comments at the meeting as bad form and outside proper channels and the requisite expertise, so the athletic director requested that she do the job for which she was hired, "stop complaining about every condition," use the proper chain of communication for raising serious complaints, avoid upsetting board members that might put her job in "jeopardy," and that she go coach elsewhere if she believed that people were not sincere in their efforts to do the right thing. The superintendent later sent an email to Wawasee staff sharing that the swim coach seemed to "hijack"

---

[2] Ms. Robinson seems not to dispute this fact.

the meeting and applauding staff for holding their tongues when Ms. Robinson did so, noting her air quality complaints had been a "hallmark of her tenure."

The next run-in with the administration occurred in 2017. In January, Ms. Robinson held a parent meeting at which she discommended the coaching philosophies of the middle school swim coaches, and in the administration's eyes spoke negatively of these two coaches. One of the parents attending that night was the middle school principal. The athletic director (now Cory Schutz) wrote a letter to Ms. Robinson and explained that it was "imperative to the future of your program that you have a cordial working relationship with the middle school teams/coaches." He encouraged her "to reach out to [the middle school coaches], apologize, and try to find a common ground on which both swim teams can function." He emphasized that they might have philosophical differences and did not "have to agree on how a program should be run," but any such disagreement "should not make its way into the public arena." Her evaluation that March recommended as an area of improvement working with the middle school feeder program, aside from otherwise largely positive comments.

A year later, on March 3, 2018, Ms. Robinson complained to the school principal and athletic director that her son was being bullied by teammates and defended the idea that she had previously complained of the pool's air quality.[3] The principal at the time was already inquiring of swim parents whether they had complaints about Ms. Robinson. Some parents had come forth on their own. In the same email exchange of March 3, Ms. Robinson was informed she was under investigation following numerous complaints by parents and students about her conduct related to the high school swim program, club program, and the state swim meet. The principal said parents and students were "fearful to make a report due to concerns that [Ms. Robinson] may seek retribution on them or their children."

---

[3] In reciting her version of the facts in briefing, Ms. Robinson says this email [ECF 54-5 at 25-26] constituted a complaint about sex discrimination [ECF 60-1 at 6]. There is no mention of any such thing in this communication.

3

The principal instructed Ms. Robinson not to contact any parents or students regarding the investigation else she could face immediate suspension.

After the investigation, on March 23, 2018, the administration recommended that Ms. Robinson remain in her position as head varsity swim coach for the 2018-2019 school year, with several caveats intended to be responsive to parental complaints and to address ongoing communication and collaboration difficulties with the middle school swim program. The principal provided her a written performance development plan [ECF 54-5 at 29].

One week later, Ms. Robinson filed a gender discrimination complaint with the Equal Employment Opportunity Commission (EEOC). She alleged that since 2017 she was told that she "would need to defer any decision making about the swim program or coaching philosophies to the middle school coaches, who [were] male." She further alleged that the conditions expressed in the performance development plan were vague, unmeasurable, "and were concerned with approachability, communication and positivity." She believed that the athletic director "and the two male middle school coaches [were] paving a way for [her] termination by creating a false perception of [her] demeanor and damaging [her] reputation." She said she was treated differently than male coaches by being asked to defer to middle school coaches, by not being consulted about changes to the athletic program, and by being held to a different standard as to approachability and positivity.

Two weeks after this EEOC complaint, the athletic director emailed all coaches, including Ms. Robinson, asking them to provide budget information for all club sport programs that operated at the school and charged a fee. The purpose of this request was to assess whether these programs, which used Wawasee school facilities, retained funds to help student athletes who could otherwise not afford to participate. Ms. Robinson claims that this request was an accusation that she overcharged her club athletes and that male coaches were not asked to provide this information. The request was sent via email to all coaches, both male and female, however.

4

In December 2018, Ms. Robinson emailed the principal to schedule a meeting among the swim coaches and the administration. The principal agreed that a meeting would be good and suggested any day within the following week for her and the athletic director. The principal reminded Ms. Robinson of the importance of using the school's communication system and utilizing the chain of command (speaking first with the athletic director), aside from emphasizing other components of the performance development plan.

The same day as the principal's email, Ms. Robinson filed a claim of sex discrimination and retaliation with the school's director of personnel and legal services. She alleged that she was being held to a higher standard than other coaches and was retaliated against based on her EEOC complaint. She said she was being singled out to use school email, provide financials for the club swim team, and acquiesce control of the swim team's feeder program and coaches. She claimed the school deprived her of information about the pool's air system and quality and hired an athletic secretary she disliked in retaliation for her complaints. After an investigation, the school found her allegations unfounded and recommended no disciplinary action against the superintendent, principal, or athletic director.

On November 30, 2021, the EEOC closed its file, concluding it was unable to establish any statutory violations. Ms. Robinson received notice of her right to sue. She filed her suit in state court on December 28, 2018, which Wawasee removed here on January 21, 2019. On March 14, 2019, Ms. Robinson's swim contract was not renewed for the 2019-2020 swim season. She thus amended her complaint on March 28, 2019.

STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The non-moving party must present the court with evidence on which a reasonable jury could rely to find in her favor. *Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 972 (7th Cir. 2020). The court must

5

construe all facts in the light most favorable to the non-moving party, view all reasonable inferences in that party's favor, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 491-92 (7th Cir. 2000), and avoid "the temptation to decide which party's version of the facts is more likely true," *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003); *see also Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 924-25 (7th Cir. 2020).

In performing its review, the court "is not to sift through the evidence, pondering the nuances and inconsistencies, and decide whom to believe." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994). Nor is the court "obliged to research and construct legal arguments for parties." *Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011). Instead, the "court has one task and one task only: to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge*, 24 F.3d at 920. The court must grant a summary judgment motion when no such genuine factual issue—a triable issue—exists under the law. *Luster v. Ill. Dept. of Corrs.*, 652 F.3d 726, 731 (7th Cir. 2011).

## DISCUSSION

A.  *Timeliness of Ms. Robinson's Title VII Discrimination Claims.*

Ms. Robinson alleges various events across her tenure demonstrate sex discrimination. Wawasee argues that not all her allegations are timely. To preserve a claim for an unlawful employment practice, a party must file a charge with the EEOC within 300 days of the incident. *See* 42 U.S.C. § 2000e-5(e)(1); *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 104-05 (2002). The charge restrains which discriminatory claims can be pursued in court. *Moore v. Vital Prod., Inc.*, 641 F.3d 253, 256-57 (7th Cir. 2011). "Any discrete discriminatory acts that fall outside the statute of limitations are time-barred even though they may relate to other discrete acts that fall within the statute of limitations." *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 723 (7th Cir. 2004) (citation omitted).

Although today Ms. Robinson says discriminatory acts occurred as early as 2011, her EEOC charge claimed that the earliest discriminatory act occurred on January 18, 2017. Events such as the

6

superintendent's comments in 2011, the administration's response to her conduct at the school board meeting in 2012, and the letter about her January 2017 parent meeting fall outside a timely Title VII claim. Such allegations are time-barred. *See Lucas*, 367 F.3d at 723-24 ("timely filed discrete acts cannot save discrete acts that are related but not timely filed").

Ms. Robinson argues that these untimely claims are actionable because they form a continuing violation. The continuing violation doctrine only applies to hostile work environment claims—when the discriminatory acts constitute a single unlawful employment practice—a claim Ms. Robinson has not brought. *See Barrett v. Illinois Dept. of Corr.*, 803 F.3d 893, 898 (7th Cir. 2015) (citing *Morgan*, 536 U.S. at 116-18). The historical allegations of sex discrimination "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered, [they are] merely an unfortunate event in history [that] has no present legal consequences." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977). Only incidents that occurred on or after June 3, 2017—namely the 2018 events and her non-renewal—constitute actionable conduct under Title VII today.

      B.      *Sex Discrimination under Title VII.*

Ms. Robinson argues that Wawasee unlawfully imposed conditions on her employment, such as asking her to defer to the male coaches and to be more approachable, and then declined to renew her contract. Wawasee says she cannot establish a *prima facie* case of sex discrimination. The question before the court is whether the evidence would permit a reasonable factfinder to conclude that Ms. Robinson's sex caused an adverse employment action. *See Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017); *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016). To answer this question, the court considers the evidence as a whole. *See Ortiz*, 834 F.3d at 765.

Title VII makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). "[T]he well-known and

7

oft-used *McDonnell Douglas* framework for evaluating discrimination remains an efficient way to organize, present, and assess evidence in discrimination cases." *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018). "There is no magic to this test," but viewing the evidence as a whole, this framework allows the court to consider "whether a reasonable factfinder could conclude that an employer engaged in an adverse employment action based on the plaintiff's race or other proscribed factor." *Id.*

Under this framework, Ms. Robinson must marshal evidence that (1) she is a member of a protected class, (2) she was meeting Wawasee's legitimate expectations, (3) she suffered an adverse employment action, and (4) similarly situated employees who were not members of her protected class were treated more favorably. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973); *McDaniel v. Progress Rail Locomotive, Inc.*, 940 F.3d 360, 368 (7th Cir. 2019) (applying framework post-*Ortiz*). If she meets her burden on these four prongs, the burden shifts to Wawasee to articulate a legitimate, nondiscriminatory reason for the adverse employment action, at which point the burden shifts back to Ms. Robinson to submit evidence that Wawasee's explanation is pretextual. *McDaniel*, 940 F.3d at 368 (citation omitted).

Ms. Robinson's Title VII discrimination claim falters because no reasonable jury could find that she was meeting Wawasee's legitimate expectations or that similarly situated male coaches were treated more favorably. *See id.* at 369 ("As [the plaintiff] has not identified any similarly situated employees to allow a factfinder to conduct a meaningful comparison, [her] *prima facie* case for discrimination fails.") (quotation and citation omitted); *Naik v. Boehringer Ingelheim Pharms., Inc.*, 627 F.3d 596, 600 (7th Cir. 2010) (must show meeting expectations at time of adverse employment action).

In rather scant terms, Ms. Robinson says she was meeting employment expectations. The argument proves largely undeveloped outside of just making this statement [ECF 60-1 at 10]. *See Gross v. Town of Cicero*, 619 F.3d 697, 704 (7th Cir. 2010) (quoting *APS Sports Collectibles, Inc. v. Sports Time,*

8

*Inc.*, 299 F.3d 624, 631 (7th Cir. 2002)) ("not this court's responsibility to research and construct the parties' arguments"). "Strictly speaking, a plaintiff's own assertion that she met her employer's expectations *might* be sufficient to establish the second element of her *prima facie* case." *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 574 (7th Cir. 2021) (citation omitted). But the evidence as a whole must raise a triable factual issue to survive summary judgment. *Id.* Employee expectations are judged by "looking at [the employee's] job performance through the eyes of her supervisors at the time of [the adverse action]." *Gates v. Caterpillar, Inc.*, 513 F.3d 680, 689-90 (7th Cir. 2008). Through this lens, just because an employee may disagree with negative evaluations "does not mean that the evaluations were the result of unlawful discrimination." *Igasaki v. Illinois Dept. of Fin. & Pro. Regul.*, 988 F.3d 948, 958 (7th Cir. 2021).

Elsewhere in briefing, Ms. Robinson refers to her record, experience, and generally satisfactory performance reviews, but she has not established for a reasonable jury that she was meeting Wawasee's reasonable expectations as set forth in her March 2018 performance development plan. That the school needed to implement such a plan demonstrates that she was not meeting its expectations. That the school received complaints from parents that led to this plan underscores the same point. That numerous parents continued to complain about Ms. Robinson's ongoing conduct after the school implemented this plan [ECF 54-3 at 14-23] drives the point home. With this persisting, the principal continued to reemphasize to Ms. Robinson, even as late as December 2018 (just a few months before her non-renewal), that she needed to meet the plan's expectations. Ms. Robinson cannot show that she met Wawasee's reasonable expectations.

In addition, Ms. Robinson cannot establish to a reasonable jury that Wawasee treated similarly situated male employees more favorably than her. To be similarly situated, an employee needs to be "directly comparable," though not necessarily identical. *Johnson*, 892 F.3d at 895. "The similarly-situated inquiry is flexible, common-sense, and factual. It asks essentially, are there enough common

9

features between the individuals to allow a meaningful comparison?" *Id.* (quoting *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012)). Though flexible, the court generally looks to whether the plaintiff has identified a comparator who was "(1) [] supervised by the same person, (2) [] subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *McDaniel*, 940 F.3d at 369 (quoting *Gates*, 513 F.3d at 690). "Whether a comparator is similarly situated is typically a question for the fact finder, unless, of course, the plaintiff has no evidence from which a reasonable fact finder could conclude that the plaintiff met [her] burden on this issue." *Id.*

Ms. Robinson points to one male tennis coach. He too reported to the same athletic director as she did. Wawasee disciplined this tennis coach for texting students in the middle of the night. The coach was directed to communicate via email pursuant to school policy—much in the same way that Ms. Robinson was reminded to use the same means of official communication. She thus wasn't treated differently. There the similarities end. There seem to be no other comparables because she engaged in other conduct that led to her non-renewal. She received a performance plan, more than one warning, and an opportunity to meet these expectations, but she fell short. The school received more complaints from parents. The administration needed to continue to remind her of her obligations. In contrast, the tennis coach voluntarily resigned after receiving a verbal reprimand, with seeming no opportunity, like Ms. Robinson, to modify behavior for the best interests of the student athletes, parents, and school. Furthermore, Ms. Robinson has not argued, nor does the record show, what position the tennis coach held (*e.g.* assistant, head, varsity, junior varsity), what was required of an individual holding that position, or why her position and his should be viewed as comparable. *See Johnson*, 892 F.3d at 895. For any number of reasons then, Ms. Robinson cannot establish a case of sex discrimination under the *McDonnell Douglas* framework.

Under a wholistic approach, Ms. Robinson's claims fare no better. She argues that she was asked to defer to male coaches and to be softer and more approachable. At no time within the time window of her complaint was she asked to defer to male coaches or to be softer. Consistent with past direction, she was asked to promote collaboration and communication and to address any conflicts that might exist with the feeder middle school programs. Wawasee asked her to conduct a meeting with middle school coaches, not defer. The school asked her to address conflicts, collaborate with all coaches to improve swimming for all students, promote the free sharing of ideas and philosophies, and treat all swimmers the same. The school asked her to return communications promptly and to be approachable to all swimmers and parents, but those are reasonable expectations for a high school coach, not evidence of sex discrimination. In short, the record prevents a reasonable jury from concluding that her sex led to her non-renewal, as opposed to her lack of performance. The court must grant summary judgment accordingly.

C. *Retaliation under Title VII.*

Ms. Robinson defends a Title VII retaliation claim in four sentences. She says she complained to the principal and athletic director that she was being treated less favorably than her male counterparts in March 2018. She says she reiterated this complaint in her December 2018 charge. She argues that Wawasee declined to renew her contract in March 2019, and that occurred in retaliation for her protected complaints based on this timing of events.

Title VII prohibits retaliation against an employee "because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e-3(a). The purpose of this anti-retaliation provision is to "prevent employer interference with 'unfettered access' to Title VII's remedial mechanisms . . . by prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (quoting *Robinson*

11

*v. Shell Oil Co.*, 519 U.S. 337, 346 (1997)). This prohibition "must be construed to cover a broad range of employer conduct." *Thompson v. N. Am. Stainless, L.P.*, 562 U.S. 170, 173 (2011). The pertinent inquiry is whether an employer has acted in a way that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 174 (citation omitted).

In a retaliation claim, a plaintiff may proceed under either the direct or indirect methods of proof. *See Swyear v. Fare Foods Corp.*, 911 F.3d 874, 885 (7th Cir. 2018); *Poullard v. McDonald*, 829 F.3d 844, 856 (7th Cir. 2016). Ignoring the old distinction between "direct" and "indirect" evidence in discrimination claims, *see Ortiz*, 834 F.3d at 763-64, the separate methods have continued to apply in the retaliation context, *see Swyear*, 911 F.3d at 885. Still, the court avoids sorting evidence mechanically into two different piles—one "direct" and one "indirect"—and instead focuses on the overriding central inquiry: "could a reasonable trier of fact infer retaliation[?]" *Castro v. DeVry Univ., Inc.*, 786 F.3d 559, 564 (7th Cir. 2015); *accord Ortiz*, 834 F.3d at 765-66.

Ms. Robinson cannot establish a retaliation claim under the indirect framework for the reasons the court has already stated. *See supra*; *see also Boss v. Castro*, 816 F.3d 910, 918 (7th Cir. 2016) (reciting standard). Her retaliation claim thus must rely on the direct method: she must show that (1) she engaged in a protected activity, (2) she suffered a material adverse employment action, and (3) there was a causal connection between the protected activity and adverse employment action. *Swyear*, 911 F.3d at 885; *see also Burlington*, 548 U.S. at 57. "A causal link requires more than the mere fact that an employer's action happens after an employee's protected activity." *Boss*, 816 F.3d at 918. She must show that but for the protected act, she would not have been non-renewed. *Cung Hnin v. TOA (USA), LLC*, 751 F.3d 499, 508 (7th Cir. 2014) (quoting *Reynolds v. Tangherlini*, 737 F.3d 1093, 1104 (7th Cir. 2013)) ("Retaliation claims under Title VII require traditional but-for causation, not a lesser 'motivating factor' standard of causation.").

12

Ms. Robinson has not established for a reasonable jury a causal link between either of her complaints on which she relies—one in March 2018 or the other in December 2018—and her March 2019 non-renewal. She offers this timing alone; but just because the rooster crows doesn't mean he caused the sun to rise that same morning. *See Kidwell v. Eisenhauer*, 679 F.3d 957, 966-67 (7th Cir. 2012) (holding five week lapse too long to base a retaliation claim solely on suspicious timing because "[f]or an inference of causation to be drawn solely on the basis of a suspicious-timing argument, we typically allow no more than a few days to elapse between the protected activity and the adverse action"); *Filipovic v. K&R Express Sys.*, 176 F.3d 390, 398-99 (7th Cir. 1999) (four months between protected activity and termination was "counter-evidence of any causal connection"). Because she offers no evidence to link these events, the court must grant summary judgment on this claim.

    D.    *Sex Discrimination under Title IX.*

Ms. Robinson asserts a discrimination claim under Title IX. "Title IX prohibits sex discrimination by recipients of federal education funding." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173 (2005); *see also* 20 U.S.C. § 1681(a). A private right of action exists. *Jackson*, 544 U.S. at 173. "[F]ederal courts look to cases decided under Title VII to inform analysis under Title IX." *Doe v. Univ. of Illinois*, 138 F.3d 653, 665 (7th Cir. 1998), *vacated on other grounds sub nom. Bd. of Trustees of Univ. of Illinois v. Doe*, 526 U.S. 1142 (1999). When the allegedly discriminatory action does not implicate an official policy of the educational institution, damages are only recoverable when an official "who at a minimum has authority to address the alleged discrimination and to institute corrective measures . . . has actual knowledge of discrimination . . . and fails adequately to respond." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). This failure to act must amount to deliberate indifference. *Id.*

Wawasee argues that it investigated Ms. Robinson's complaints of sex discrimination to the school rather than deliberately ignored them. For instance, she made a formal complaint of sex discrimination to the school's director of personnel and legal services on December 14, 2018, nine

13

months after submitting a charge to the EEOC. The school's assistant superintendent investigated the complaint and submitted a report and recommendation directly to the board. The report detailed the school's investigation into her claims. The school concluded that Ms. Robinson's claims were unfounded and thus recommended no action be taken. Ms. Robinson has not demonstrated for a reasonable jury how Wawasee acted with deliberate indifference, much less established a sex discrimination claim under Title IX. Ms. Robinson returns to argue for sex discrimination under Title IX using the same rubric under Title VII, but that proves untenable on this record.

  E. *Sex Discrimination under the Equal Protection Clause.*

A party alleging discrimination against a public school can also bring an equal protection claim under 42 U.S.C. § 1983. *Fitzgerald v. Barnstable Sch. Comm.*, 555 U.S. 246, 259 (2009). In doing so, the party must prove that "the [discrimination] was the result of municipal custom, policy, or practice." *Id.* at 257-58 (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978)). Else the same standard for proving discrimination under Title VII applies to a § 1983 equal protection claim. *See Davis v. Wisconsin Dept. of Corr.*, 445 F.3d 971, 976 (7th Cir. 2006). For this claim, Ms. Robinson has not established sex discrimination for a reasonable jury in the same way she has not established a Title VII claim, *see supra*, nor has she shown that it stemmed from the school's custom, policy, or practice. The court grants summary judgment accordingly.

  F. *First Amendment Retaliation Claim*

Ms. Robinson last claims her contract was not renewed because of her comments about the pool's air quality—a subject of public concern. The administration characterized her complaints in this regard as a "hallmark of her tenure," and the record establishes that she complained about the pool's air quality at various times, including as late as March 2018. Wawasee argues that her claim based on old speech is time-barred and that she has not established that her speech motivated her non-renewal in any event.

To succeed on a First Amendment retaliation claim, Ms. Robinson must prove her speech bore on a matter of public concern and played at least a motivating factor in the school's adverse action. *Gustafson v. Jones*, 290 F.3d 895, 906 (7th Cir. 2002). This connection between the speech and the adverse action can be inferred if the "adverse employment action took place on the heels of protected activity." *Mullin v. Gettinger*, 450 F.3d 280, 285 (7th Cir. 2006) (quotation and citation omitted). If shown, the burden shifts to Wawasee to prove that "[its] interest, as an employer, in efficiently providing government services outweighs the employees' First Amendment interests, or . . . that [it] would have disciplined the employee[] even in the absence of the speech." *Gustafson*, 290 F.3d at 906.

Ms. Robinson largely focuses on her 2012 and 2016 complaints about the pool's air quality, including her reprimand for addressing this issue to the board directly in 2012, all of which to a reasonable jury remain far too attenuated from her 2019 non-renewal. *See, e.g., Mullin*, 450 F.3d at 285. She marshals no facts to demonstrate, even with the added mention of the pool's air quality in her March 2018 email—which reads more of a defense for raising the issue earlier than a new complaint—that her air quality complaints motivated Wawasee's decision not to renew her contract. The timing alone isn't enough. The court thus grants summary judgment on this claim.

## CONCLUSION

Construing all facts and reasonable inferences in favor of Julie Robinson, the court GRANTS her motion to amend the response [ECF 60] but GRANTS Wawasee's summary judgment motion [ECF 54], thereby terminating this case. The court DIRECTS the entry of judgment for Wawasee Community School Corporation.

SO ORDERED.

January 24, 2022                                           *s/ Damon R. Leichty*
                                                           Judge, United States District Court